UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ELYESE ANDERSON, et al.,           )
                                    )
              Plaintiffs,           )
                                    )
       vs.                          )        Case No.  4:06CV919 HEA
                                    )
MICHAEL WADDLE, et al.,             )
                                    )
              Defendants.           )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants Waddle's Motion for Summary

Judgment, [Doc. No. 125], Defendants, Ayers, Martin, Cross, Jacobs-Kenner,

White, Rohrbach, McGowan, Harrison, Abernathy, and Engelhardt's (the DFS

Defendants) Motion for Summary Judgment based on Defendants' Qualified

Immunity from Suit, [Doc. No. 128] and Defendant Hall's Motion for Summary

Judgment, [Doc. No. 132].  Plaintiffs oppose the motions.

## Facts and Background

Plaintiffs'[1] Second Amended Complaint alleges that Plaintiffs seek redress for

alleged violations of their constitutional rights: to be free from unreasonable

seizures, family integrity, religious freedom, free speech, expressive association,

---

[1] Since the filing of this action, several individual plaintiffs have sought, and have been
granted, leave to voluntarily dismiss.

private association, and procedural and substantive due process. Plaintiffs also allege violations of state law: abuse of process, false imprisonment and invasion of privacy. All defendants are sued in their individual capacities.[2]

Plaintiffs Heartland Academy Christian Community Church and CNS International Ministries, Inc., (collectively referred to as Heartland) are Missouri not-for-profit corporations. The individual plaintiffs consist of students and parents of students who attend or prior to October 30, 2001 attended Heartland Academy.

The Second Amended Complaint alleges that in or before April, 2001 the Defendants individually, in concert with each other and in concert with other persons, began a systematic, persistent and continuous campaign of bad-faith harassment and intimidation against Plaintiff Heartland Academy Community Church, its students and their families, faculty and staff, (collectively referred to as the "Heartland community,") to disrupt, damage and possibly destroy the Heartland community, in violation of the constitutional rights of the Heartland community. The Second Amended Complaint further details the events which Plaintiffs allege gave rise to their claims. References throughout the Second Amended Complaint

---

[2] The Second Amended Complaint states also that the individual defendants are sued in their official capacities to the extent that injunctive or declaratory relief is sought. Plaintiffs do not, however request any injunctive or declaratory relief in their prayer for relief.

detailing the events are made to "the defendants" as well as specific actions taken by individual defendants.

The factual background leading up to this matter has been briefly summarized by the Eighth Circuit Court of Appeals in its Opinions affirming the previous declaratory judgment action:

> Briefly, in October 2001, Waddle, as Chief Juvenile Officer for the Second Circuit of Missouri, effected the removal of 115 boarding students from Heartland Christian Academy (HCA), an educational facility owned and operated by Heartland. Although Waddle had obtained ex parte probable-cause state-court orders to remove some of the boarding students (and also to remove some students who were no longer at HCA and others who were not even within the jurisdiction of juvenile authorities because of their ages), there were no orders of any kind to remove many of the students who were taken from the school that day. The removal action was without notice to Heartland, the students, or their parents and was taken because of several allegations of mistreatment and abuse of students at HCA.

*Heartland Academy Community Church v. Waddle* 427 F.3d 525, 528 -529 (8th Cir. 2005).

> CNS [International Ministries, Inc.] owns and operates the Heartland Christian Academy (HCA) in Shelby County, Missouri, a Christian educational facility that provides services to children with behavioral and substance abuse problems. The school is a part of a complex that spans Lewis, Knox, and Shelby counties and includes dormitories, group homes, residences, a spiritual retreat, a steakhouse, and a dairy operation. Some students live in housing on the property, whereas others commute to attend the school. The individual plaintiffs are parents whose children were involved in the incident that led to the preliminary injunction. Waddle is the Chief Juvenile Officer for the

Second Judicial Circuit in Missouri, which includes Lewis, Knox, and Adair counties.

$$* \quad * \quad * \quad * \quad * \quad * \quad * \quad *$$

[O]n October 30, 2001, based upon continuing allegations of child mistreatment and abuse at Heartland facilities, juvenile authorities and uniformed, armed law enforcement officers removed from HCA 115 children, virtually all of the boarding students who attended the school, loading them onto school busses and taking them into protective custody. The removal was without notice to Heartland, the students, or their parents. Authorities had ex parte probable-cause state-court orders to remove only about seventy-five of the students who were taken into custody, as well as orders for approximately forty children who no longer lived at Heartland and for four others who were over the age of eighteen, that is, adults over whom juvenile authorities had no jurisdiction. Waddle had sought the orders using a list of boarding students that he had obtained in July 2001, which evidently was inaccurate by October when he decided that all of the children living at Heartland needed to be removed immediately.

$$* \quad * \quad * \quad * \quad * \quad * \quad * \quad *$$

The removal took over two hours, with Waddle himself noting, "The juveniles showed their emotion about leaving Heartland school in these circumstances by weeping, hugging teachers, praying, silence, singing songs, seeming non-plussed or shouting at juvenile office staff." Br. of Appellant at 16. The students were confined by juvenile authorities, up to several days, until their parents came for them. When parents retrieved their children, they were given a copy of a letter from a juvenile officer, which advised them against returning their children to Heartland, suggesting that doing so might result in a loss of custody or a referral to law enforcement authorities.
Post-removal juvenile detention hearings were scheduled for Friday, November 2, 2001, but Waddle sought dismissal of the cases for those children whose parents had picked them up by that date and a brief

> continuance until Monday for those whose parents had not yet come
> for them. All cases eventually were dismissed.

*Heartland Academy Community Church v. Waddle* 335 F.3d 684, 687-688 (8th

Cir. 2003).[3]

Plaintiffs seek actual, compensatory, nominal and punitive damages for the

alleged violations. Plaintiffs' claims are set forth in nine separate counts as follows:

Count I is brought by all of the individual students and parents against all defendants

for violation of their family integrity rights/parental rights under the United States

Constitution pursuant to 42 U.S.C. § 1983. Count II is a Section 1983 claim

brought by the students against all defendants for violation of their rights against

unreasonable seizure under the U.S. Constitution. Count III is a Section 1983 claim

brought by the students and parents against all defendants for violation of their

freedom of association rights under the U.S. Constitution. Count IV is a Section

1983 claim of students and parents against all defendants for violation of their free

speech and religious freedom rights under the U.S. Constitution. Count V is a

Section 1983 claim of the Heartland Plaintiffs against the "DFS Defendants,"

(Defendants Dana Martin, Denise Cross, Jerrie Jacobs-Kenner, Christine White,

Donna Rohrbach, Pam McGowan, James Harrison, Mac Abernathy, and Richard

_____

[3] For further _factual_ _background_, see Judge Webber's Opinion, *Heartland Academy Community Church v. Waddle*, 317 F.Supp. 984 (E.D. Mo. 2004).

Engelhardt), for violation of their freedom of association rights under the U.S. Constitution.  Count VI is a Section 1983 claim of the Heartland Plaintiffs against the DFS defendants for a violation of their free speech and religious freedom rights under the U.S. Constitution.  Count VII is a state law claim of students and parents against all defendants for abuse of process-protective custody.  Count VIII is a state law claim of students against all defendants for false imprisonment.  Count IX is a state law claim of the Heartland plaintiffs against the DFS defendants for invasion of privacy.

## Discussion

Defendants move for summary judgment arguing that they are entitled to qualified immunity from suit.  When bringing a summary judgment motion, the moving party is required to present "the pleadings, the discovery and disclosure materials on file, and any affidavits [which] show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The adverse party "may not rely merely on allegations or denials in its own pleading," rather the non-moving, party must "set out specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e)(2).  Courts are "obligated to construe the 'record in the light most favorable to the non-moving party ... and ... afford him all reasonable inferences to be drawn from that record.'

*Davis v. Hall*, 375 F.3d 703, 711 (8th Cir.2004). 'In qualified immunity cases, this usually means adopting ... the plaintiff's version of the facts.' *Scott v. Harris*, --- U.S. ----, 127 S.Ct. 1769, 1775, 167 L.Ed.2d 686 (2007)." *Moore v. Indehar* 514 F.3d 756, 757 -758 (8th Cir. 2008); *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 916 -917 (8th Cir. 2007).

.       The Supreme Court has clearly defined the qualified immunity analysis. The Court must ask whether: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right? This must be the initial inquiry." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the court finds a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established ... in light of the specific context of the case." *Ibid.*; *Scott,* ---U.S. ----, 127 S.Ct. 1774. Both the Supreme Court and this Eighth Circuit "'repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Saucier*, 533 U.S. at 201 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)); see *Schatz Family ex rel. Schatz v. Gierer*, 346 F.3d 1157, 1160 (8th Cir.2003). Courts stress the importance of doing the qualified immunity analysis early in litigation because those entitled to qualified immunity hold "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v.*

*Forsyth*, 472 U.S. 511, 526 (1985). This "entitlement is an immunity from suit rather than a mere defense to liability; and ... it is effectively lost if a case is erroneously permitted to go to trial." *Id.*

Whether a right is clearly established is determined based on a reasonable person standard. "Officers are entitled to qualified immunity if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sanders v. City of Minneapolis*, 474 F.3d 523, 526 (8th Cir.2007). When making this determination, the facts are viewed in the light most favorable to the plaintiff. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The right is considered clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Robinette v. Jones*, 476 F.3d 585, 592 (8th Cir. 2007). If there is a constitutional violation, the Court asks whether it was clearly established at the time of the violation such that a reasonable person would have known that his actions violated a constitutional right. *Riehm v. Engelking*, 538 F.3d 952, 962 (8th Cir. 2008).

## <u>*Res Judicata*</u>

Plaintiffs argue that the issue of whether Defendant Waddle violated their constitutional rights has been resolved based on the doctrine of *res judicata*. Plaintiffs contend that Judge Webber's finding that Defendant Waddle violated the

constitutional rights of the Heartland Plaintiffs, should apply herein. Plaintiffs also argue that Judge Webber's ruling should be persuasive authority for this Court's determination with respect to the other defendants.

In so arguing, Plaintiffs seek to apply offensive collateral estoppel to the issue. Offensive collateral estoppel is defined as "a plaintiff ... seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." *Parklane Hoisery Co., Inc. v. Shore*, 439 U.S. 322, 329 (1979). An "argument against offensive use of collateral estoppel is that it may be unfair to a defendant. If a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, particularly if future suits are not foreseeable." *Parklane Hosiery,* 439 U.S. at 330-331. Furthermore, the Eighth Circuit has stated that "[i]f application of offensive issue preclusion would be unfair to a defendant, a trial judge should not allow the use of offensive issue preclusion." *Berger Transfer & Storage v. Central States, Southeast and Southwest*, 85 F.3d 1374, 1377 (8th Cir. 1996).

The previous action sought only injunctive relief by the Corporate Defendants, whereas this action seeks monetary damages, including punitive damages. Defendant Waddle falls squarely within the exception contemplated by the Supreme Court. The previous action involved no monetary relief; this action

seeks substantial monetary relief against the defendants in their individual capacities. Thus, the Court finds that it would be unfair to apply the doctrine in this case.

Likewise, Plaintiffs' claims of persuasive and controlling precedent as to Defendant Ayers and the DFS Defendants are equally unavailing and misplaced. Defendant Ayers was unable to appeal Judge Webber's decision and the DFS Defendants were not parties to the previous litigation.[4]

Moreover, the previous case involved only injunctive relief whereas this matter, as previously set forth, includes claims for monetary damages. In essence, the stakes are much higher in this litigation as to all defendants, none of whom had a full and fair opportunity to fully litigate their involvement in the events which give rise to this case.

## Violation of Constitutional Rights

Plaintiffs present claims for alleged violations of various constitutional rights.

### Individual Students and Parents against all Defendants for Violation of their Family Integrity Rights/Parental Rights under the United States Constitution

---

[4] Curiously, although Plaintiffs argue that Judge Webber's conclusions should have a preclusive effect on those issues wherein he found constitutional violations, Plaintiffs urge that they should now be allowed to attempt to prove constitutional violations of which Judge Webber found no violation.

The Eighth Circuit Court of Appeals has recognized that parents have an important, but limited substantive due process right in the care and custody of their children. *Manzano v. South Dakota Dept. of Soc. Servs.*, 60 F.3d 505, 509-10 (8th Cir.1995). Liberty interests of parents include the custody, care, and management of their children. *King v. Olmsted County*, 117 F.3d 1065, 1067 (8th Cir.1997). The Supreme Court held in *Pierce v. Society of Sisters* that a private school could assert such a claim on its own behalf. 268 U.S. 510 (1925). This right is limited though, because the state has a potentially conflicting, compelling interest in the safety and welfare of the children, which potentially conflicts with that right. *Id.* at 510 ("'[T]he liberty interest in familial relations is limited by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves.'") (quoting *Myers v. Morris*, 810 F.2d 1437, 1462 (8th Cir.1987)). The right is important because of the need to "curb [ ] overzealous suspicion and intervention on the part of health care professionals and government officials, particularly where the effect of such overzealousness may have the effect of discouraging parents or caretakers from communicating with doctors or seeking appropriate medical attention for children with real or potentially life-threatening

conditions." *Thomason v. SCAN Volunteer Servs., Inc.*, 85 F.3d 1365, 1373 (8th Cir.1996).

> The net result of these competing interests is that we must weigh the interests of the state and child against those of the parents to determine whether a constitutional violation has occurred. Under this balancing test, the officials' actions must have been based on a reasonable suspicion of abuse and must not have been disproportionate under the circumstances. *Id.* at 1371-72 ("The difficulty in the present case is not whether such a reasonable suspicion can be found, but rather, whether the actions taken by the defendants and the resulting disruption to plaintiffs' familial relations with [the child] were so disproportionate under the circumstances as to rise to the level of a constitutional deprivation.").

*Abdouch v. Burger* 426 F.3d 982, 987 (8th Cir. 2005).

Both parents and children have a liberty interest in the care and companionship of each other. See *Lehr v. Robertson*, 463 U.S. 248, 258 (1983). ("[T]he relationship of love and duty in a recognized family unit is an interest in liberty entitled to constitutional protection.").

The Court takes a broad view of what constitutes "clearly established" under the qualified immunity analysis. *Munz v. Michael*, 28 F.3d 795, 799 (8th Cir.1994). The balance favors Plaintiffs when the test is based solely on the allegations in the complaint. *Hafley v. Lohman*, 90 F.3d 264, 267 (8th Cir. 1996) (balancing an employee's First Amendment rights against a public employer's interests). "We have held that 'when a state official pursuing a child abuse investigation takes an

action which would otherwise unconstitutionally disrupt familial integrity, he or she is entitled to qualified immunity, if such action is properly founded upon a reasonable suspicion of child abuse.' *Thomason*, 85 F.3d at 1371.

## Elyese Anderson v. All Defendants

Plaintiff Anderson's son was not one of the children taken from Heartland on October 30, 2001, nor is her son a party to this litigation. Neither claims a violation of rights under the Fourth Amendment to be free from unreasonable seizures. She claims, however, that Defendants' actions violated her family integrity/parental rights,[5] her rights of association and certain specific First Amendment rights. Anderson claims that being told by certain defendants to remove her son from Heartland or be charged with child abuse gave her no option but to remove him from Heartland.

Defendants actions in this regard do not rise to the level of a constitutional violation. The Eighth Circuit has afforded qualified immunity to state actors for actions taken while conducting abuse investigations:

*Manzano* is particularly instructive at this juncture:

---

[5] Defendant Anderson also claims that Defendants violated her rights of association and certain First Amendment rights. These claims are discussed, *infra*.

> As we stated in *Myers*, "the liberty interest in familial relations is limited by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." 810 F.2d at 1462. Moreover, as the First Circuit has correctly noted, "[t]he right to family integrity clearly does not include a constitutional right to be free from child abuse investigations." *Watterson v. Page*, 987 F.2d 1, 8 (1st Cir.1993).

*Omni Behavioral Health v. Miller*, 285 F.3d 646, 653 -654 (8th Cir. 2002).

Anderson's claims do not, therefore state a constitutional violation; the sole basis for the claims is with respect to the abuse investigation conducted by Defendants. See *Thomason*, 85 F.3d 1365 (8th Cir.1996); *Myers v. Morris*, 810 F.2d 1437 (8th Cir.1987); *Manzano v. South Dakota Dep't of Soc. Servs.*, 60 F.3d 505 (8th Cir.1995).

**All Other Plaintiffs v. All Defendants**

"Qualified immunity is usually raised by a motion for summary judgment after a limited amount of discovery has been conducted to determine whether defendants acted objectively in a reasonable manner and whether a plaintiff's rights were clearly established at the time of the alleged deprivation. See *Murphy v. Morris*, 849 F.2d 1101, 1103 (8th Cir.1988). This is an objective standard. The standard is to be applied to a particular defendant's conduct as a question of law and is to be decided

by the court prior to trial. *Swenson v. Trickey*, 995 F.2d 132, 133 (8th Cir.1993)."
*Whisman Through Whisman v. Rinehart,* 119 F.3d 1303, 1308-10 (8th Cir. 1997).

As set forth above, the right to familial relations was clearly established at the time of the alleged deprivation. The parents' decision to place the students at Heartland is encompassed within the perimeters of this right. Decisions as to education and upbringing are some of the fundamental rights and obligations of parents. All the details of each of these placements are unknown, and practically speaking, are not significant to this analysis except to the extent that the decision is one for the students' parents. The critical inquiry is whether, on balance with the state's interest in protecting children from abuse, the actions taken were objectively reasonable and not disproportionate with the situation.

Admittedly, there had been hotline calls regarding the discipline practices at Heartland. Some were substantiated, some were not. However, defendants had no evidence that <u>all</u> of the students attending and/or living within the Heartland community were subject to questionable disciplinary practices. Proportionately, the instances of alleged abuse did not indicate that all students were in immediate danger of abuse, rather, based on the reports obtained from various sources, it is clear that the number of students allegedly subject to abusive discipline was a small portion of the Heartland population. Parents, presumably the students, and Defendants, were

aware of the *raison d'etre* for Heartland, *i.e.*, to provide an extremely structured, disciplined environment for troubled students in an attempt to prepare them for a productive adulthood. Heartland was not a licensed facility under the auspices of any state authority; it made no secret of its use of corporal punishment, but did, however attempt to work with different juvenile authorities to ensure that the corporal punishment did not amount to abuse. It is only when Defendants thought Heartland was not complying with what Defendants believed should be done in this regard that Defendants decided that all students should be removed. While specific instances of discipline may have risen to the level of abuse, these instances had been in the past and had or were being resolved at the time of the mass removal. Furthermore, at that time, there had not been any indication that the basis upon which Defendants justified the removal were immediately occurring. Indeed, it has been established that the *ex parte* orders that authorized the removal of some of the students were based on stale information and misinformation. Genuine issues of material fact exist as to whether Defendants' actions were objectively reasonable under the circumstances. Defendants are therefore not entitled to qualified immunity on Plaintiffs' family integrity/parental rights claims. Additionally, genuine issues of material fact exist with respect to the degree of each defendant's involvement in the

mass removal as to whether their actions were objectively reasonable in the circumstances.

### Students against all Defendants for Violation of their Rights Against Unreasonable Seizure under the U.S. Constitution

The above analysis of qualified immunity applies equally to the student Plaintiffs. There is no dispute that the right to be free from unreasonable seizure was clearly established at the time of the mass removal as guaranteed by the Fourth Amendment. The question therefore becomes whether the seizure of the students was unreasonable such that their rights were violated. As discussed above, Defendants have failed to present any evidence that immediate need for removal was required in order to protect all of the children removed. Defendants had been discussing the Heartland situation for several months before executing the mass removal of the students. At the time the *ex parte* orders were obtained for some of the students, some of the information upon which these orders were based was several months old. There was no imminent threat of danger to any of the removed students. Indeed, none of the students who were removed on October 30, 2001 was involved in any of the alleged abuse incidents, nor was there any indication that any of them were at risk of any discipline, much less abuse. The all inclusive removal of the boarding students at a time where there were no exigent circumstances was

unreasonable. Defendants are not entitled to qualified immunity on the students' unreasonable seizure claim.

## Associational Rights Claims

At the time of the events giving rise to this matter, the right of freedom of association was indeed clearly established:

> An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed. See, e.g., *Citizens Against Rent Control/Coalition for Fair Housing v. Berkeley*, 454 U.S. 290, 294, 102 S.Ct. 434, 456, 70 L.Ed.2d 492 (1981). According protection to collective effort on behalf of shared goals is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority. See, e.g., *Gilmore v. City of Montgomery*, 417 U.S., at 575, 94 S.Ct., at 2427; *Griswold v. Connecticut*, 381 U.S., at 482-485, 85 S.Ct., at 1680-1682; *NAACP v. Button*, 371 U.S. 415, 431, 83 S.Ct. 328, 337, 9 L.Ed.2d 405 (1963); *NAACP v. Alabama ex rel. Patterson*, 357 U.S., at 462, 78 S.Ct., at 1171. Consequently, we have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends. See, e.g., *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907-909, 932-933, 102 S.Ct. 3409, 3422-3423, 3436, 73 L.Ed.2d 1215 (1982); *Larson v. Valente*, 456 U.S. 228, 244-246, 102 S.Ct. 1673, 1683, 1684, 72 L.Ed.2d 33 (1982); *In re Primus*, 436 U.S. 412, 426, 98 S.Ct. 1893, 1901, 56 L.Ed.2d 417 (1978); *Abood v. Detroit Board of Education*, 431 U.S. 209, 231, 97 S.Ct. 1782, 1797, 52 L.Ed.2d 261 (1977).

*Roberts v. U.S. Jaycees,* 468 U.S. 609, 622 (U.S.1984).

The First Amendment commands that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. Freedom of association is inherently a part of those liberties protected by the First Amendment. See *Buckley v. Valeo*, 424 U.S. 1, 15, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) ("The First Amendment protects political association as well as political expression."). If it were not so, many of the Amendment's guarantees would ring hollow.

*Republican Party of Minnesota v. White* 416 F.3d 738, 748 (8th Cir. 2005).

The first question that must be answered, then, is whether and to what extent defendants' actions burdened that right. See *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 657-59 (2000). Mere incidental burdens on the right to associate do not violate the First Amendment; rather, "[t]o be cognizable, the interference with [plaintiffs'] associational rights must be "direct and substantial" or "significant." *Lyng v. Int'l Union*, 485 U.S. 360, 366, 367 & n. 5 (1988).

There can be no question that the mass removal of students was direct and substantial. Neither the students nor Heartland were given notice of the removal. The disruption in the lives of the students from that to which they were accustomed is indeed significant, particularly in light of the fact that many of the students were at Heartland because of the need for a more structured environment. The record is not clear that the students were counseled regarding the removal as to why they were being taken into custody, where they were going, for how long, etc.

With regard to the objective reasonableness of Defendants' actions, the Court once again concludes the actions were not reasonable, and therefore Defendants are not entitled to qualified immunity on this issue. The mass removal of the students from this chosen environment without a showing of exigent circumstances places Plaintiffs' rights to associate squarely within the cross-hairs, and does not fall within the protective shield of qualified immunity.

The same analysis is not applicable to Plaintiff Anderson since her son was not one of the individuals removed from Heartland on October 30, 2001. Anderson's sole basis for her claim is that Defendants actions required her to withdraw her son from Heartland. In the context of their abuse investigation, Defendants' actions did not violate Anderson's right of association to the extent that it was direct and substantial. Although Anderson was advised to remove her son from Heartland, no actions were taken to involuntarily remove him. There has been no showing of a direct and substantial interference with Anderson's association with Heartland.

## Free Speech and Religious Freedom
## Rights under the U.S. Constitution

While there can be no dispute that the fundamental rights of free speech and freedom of religion, which are so deeply entrenched in the history and development of this country, were "clearly established" at the time of the removal of the students,

the Court's initial inquiry is whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?" *Saucier* 533 U.S. at 201. The record establishes that Defendant Waddle voiced his disagreement with the manner in which the Heartland Community practiced Christianity. Notably, Waddle was concerned that the Heartland Community was, in essence, a "cult." A philosophical disagreement with the manner in which one practices one's faith does not rise to the level of a constitutional violation. Based on the record before the Court, there is no evidence that any of the Defendants acted upon these disagreements. There is, however, nothing before the Court in this record which establishes that Defendants' actions were performed to suppress Plaintiffs' religious beliefs and free speech  rather, the actions were grounded upon Defendants' possibly overzealous attempt to eliminate the practice of corporal punishment by an entity over which there were no licensing requirements. No actions were taken based on Plaintiffs' religious beliefs, nor is there any evidence that any protected speech was quelled. Accordingly, Defendants are entitled to qualified immunity on the claims of violation of their First Amendment rights of Free Speech and Freedom of Religion.

## Conclusion

Based upon the foregoing, Defendants are entitled to qualified immunity on Plaintiff Anderson's claim of a violation of her parental rights. Defendants are not entitled to qualified immunity on the remaining Plaintiffs' claims of violations of the rights of familial integrity/parental right, unreasonable seizure and associational rights. Defendants are, however immune from Plaintiffs' claims of violations of their rights of free speech and religious freedom.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Waddle's Motion for Summary Judgment, [Doc. No. 125], Defendants, Ayers, Martin, Cross, Jacobs-Kenner, White, Rohrbach, McGowan, Harrison, Abernathy, and Engelhardt's (the DFS Defendants) Motion for Summary Judgment based on Defendants' Qualified Immunity from Suit, [Doc. No. 128] and Defendant Hall's Motion for Summary Judgment, [Doc. No. 132], are granted in part and denied in part.

Dated this 10th day of October, 2008.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE