IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| LEIGHA LAWSON, et al | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:06CV00919 HEA |
| | ) |
| | ) |
| MICHAEL WADDLE, et al. | ) |
| | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' RENEWED REQUEST THAT THE COURT TAKE JUDICIAL NOTICE
OF FINDINGS OF FACT AND CONCLUSIONS OF LAW FROM A PREVIOUS CASE
AGAINST DEFENDANT MICHAEL WADDLE**

The Plaintiffs request that the following be read to the jury prior to the close of the

Plaintiffs' case:

The Court takes judicial notice of the following facts and conclusions, which were finally
established in a previous proceeding, and are binding in this case:

1.     Defendant Michael Waddle violated the Fourth Amendment rights of Heartland
students who were removed by his office or pursuant to court orders he obtained;

2.     Defendant Michael Waddle violated the right to family integrity, under the due
process clause, of Heartland students who were removed by his office or pursuant to court
orders he obtained, and their parents;

3.     Defendant Michael Waddle violated the right to freely associate, under the First
Amendment, of Heartland Academy Community Church, CNS International Ministries,
Inc., and Heartland students, families and staff.

## ARGUMENT

This Court previously exercised its discretion to not allow the use of offensive collateral

estoppel against defendant Michael Waddle.  Since then, the Eighth Circuit issued its opinion

1

denying the appeal of the defendants in this case of this Court's denial of their summary

judgment motion. Although plaintiffs had not pressed it, the Eighth Circuit addressed the issue

of offensive collateral estoppel, stating as follows:

> [A]t the present time we need not decide whether the district court abused its broad
> discretion in declining to apply the doctrine of offensive collateral estoppel.

*Heartland Academy Community Church v. Waddle,* 595 F.3d 798, 811 (8th Cir. 2010).

The previous case, *Heartland Academy Community Church, et al. v. Waddle, et al.,* No.

2:01CV00060 ERW (E.D. Mo.), was an injunction suit that resulted in three reported decisions:

*Heartland Academy Community Church, et al. v. Waddle, et al.,* 335 F.3d 684 (8th Cir. 2003)

("Heartland I") (affirming Judge Webber's preliminary injunction of February 7, 2002);

*Heartland Academy Community Church, et al. v. Waddle, et al.,* 317 F.Supp.2d 984 (E.D. Mo.

2004) (Judge Webber's permanent injunction opinion); *Heartland Academy Community Church,*

*et al. v. Waddle, et al.,* 427 F.3d 525 (8th Cir. 2005) ("Heartland II") (affirming Judge Webber's

permanent injunction). These reported decisions are incorporated herein by reference.

Judge Webber summarized his constitutional holdings as follows:

> In sum, the Court holds that the actions of Mr. Waddle violated the students' Fourth
> Amendment right; violated Plaintiffs' right to family integrity under the due process
> clause; and violated Plaintiffs' right to freely associate under the First Amendment. The
> Court holds that the actions of Ms. Ayers violated the students' Fourth Amendment right
> and violated Plaintiffs' right to familial relations under the due process clause. The Court
> also holds that Mr. Waddle and Ms. Ayers conspired to violate the students' Fourth
> Amendment right and Plaintiffs' right to family integrity.

317 F. Supp. 2d at 1106. The Court went on to provide injunctive and declaratory relief against

Waddle, but not against Ayers. Ayers did not have the opportunity to appeal the holdings against

her, so plaintiffs do not ask that they be given preclusive (issue preclusion/collateral estoppel)

effect against her. They are to be given preclusive (issue preclusion/collateral estoppel) effect

against Waddle, however, who had the opportunity to appeal, availed himself of it, and lost.

2

"Under the doctrine of collateral estoppel, . . . the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n.5. Collateral estoppel may be used either offensively or defensively. "[O]ffensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Id.* at 326 n.4. In *Parklane,* the trial court held a bench trial on equitable claims made by the Securities Exchange Commission against a corporation, and then held a jury trial on legal claims made by shareholders against that corporation. The trial court found that the corporation was collaterally estopped from relitigating in the jury trial issues decided against it in the bench trial, and the Supreme Court ultimately affirmed.[1] *Parklane,* 439 U.S. at 335.

In the case at bar, the students and parents are permitted to use findings as to factual and legal issues from the previous litigation against Waddle. All they must show is that "the issue sought to be precluded is the same as that involved in the prior litigation, the issue was actually litigated and the party sought to be estopped was given a full and fair opportunity to be heard on the issue, and determination of the issue was essential to a valid and final judgment." *S.E.C. v. Ridenour,* 913 F.2d 515, 518 (8th Cir. 1990).

In the prior case, there were two plaintiffs, Heartland Academy Community Church and CNS International Ministries, Inc., the corporate plaintiffs in the instant case (which are, of course, suing only the DFS defendants in the case at bar). In the prior case, these corporate plaintiffs asserted their own rights and the rights of many students and their parents.

---

[1] In its previous denial, this Court stated as its reason that it would be unfair to use findings from an injunction case in a damages case. *Anderson v. Waddle,* 2008 WL 4561467, *4. In *Parklane,* plaintiffs sought to use conclusions from an equity case in their legal case, just as in the case at bar.

3

Judge Webber's legal discussion and conclusions in support of his holdings cover 17

pages of his reported opinion. 317 F.Supp.2d 984, 1090-1106. The students' Fourth

Amendment rights against unreasonable seizure (*Id.*, 1090-1097) were violated by Waddle alone

(*Id.*, 1091-1095) and as part of a conspiracy (*Id.*, 1096-1097). The students' and parents' rights

to family integrity/parental rights (*Id.*, 1097-1103) were violated by Waddle alone (*Id.*, 1099-

1101) and as part of a conspiracy (*Id.*, 1102-1103). Finally, the Court found that Waddle had

violated plaintiffs' right to associate under the First Amendment (*Id.*, 1105-1106).

Specifically, Judge Webber's opinion states:

pp. 1062-63:

As he did in June, Mr. Waddle relies on what he perceives to be poor cooperation with
Heartland as a justification to consider mass removal of the children from Heartland. The
Court concludes this was a pretext for his actions against Heartland, that he had already
decided to remove the children from Heartland on or before October 23, 2001, before
talking to Mr. Melton on either October 26 or October 29, and that the statements by Mr.
Melton, if they were spoken as Mr. Waddle claimed, in any event, in conjunction with the
other issues upon which Mr. Waddle claimed to have relied, did not justify the mass
removal. The Court finds this testimony contrived and untruthful.

p. 1093:

As noted earlier in the opinion, Mr. Waddle raised eight allegations in his petitions for
removal of the children purporting to show how Heartland was not providing a safe living
environment. However, as previously pointed out, some of the allegations were false, i.e.,
his claim that Heartland refused to produce employees who abused children or who were
witnesses to the abuse; his claim that Heartland was concealing Mr. Flood during the
O.M. investigation; his claim that Heartland was concealing Mr. Mayes during the J.K.
matter; and his claim that Heartland was concealing Mr. Jerry Parrish and that Mr. Parrish
had lost his E.M.T. license. The evidence in this case clearly establishes that Heartland
offered to produce the employees for questioning who allegedly abused children on
several occasions to the Division of Family Services' personnel and that Mr. Waddle was
aware of its offer. In addition, there is no evidence showing that Heartland "concealed"
any employees from anyone involved in the child abuse investigations. It is also clear
from the evidence presented in this case that Mr. Jerry Parrish had not lost his E.M.T.
license as alleged by Mr. Waddle in his papers.

The evidence also shows that Mr. Waddle omitted known material information from the
petitions which the Juvenile Judge testified would have been relevant to his decision to

4

issue the orders. This omitted information includes the fact that the five criminally-charged defendants involved in the Manure Pit Incident were no longer participating in the administration of discipline; that the J.O. matter upon which Mr. Waddle relied in his petition had occurred in 2000 and was determined to be "unsubstantiated" by the Division of Family Services; that no staff member had been adjudicated guilty of child abuse or neglect; that he was not seeking the removal of O.M., about whom the most recent child abuse allegation had been brought; or that Heartland had taken extensive corrective action after the July 12 and September 26, 2001 meetings. Mr. Waddle also failed to inform the Juvenile Judge of Heartland's belief that Mr. Waddle had "torn to shreds" their cooperative agreement of September 26, 2001 by his actions in removing children for questioning in violation of the agreement. The Court finds that this evidence establishes that Mr. Waddle obtained the removal orders from the Juvenile Judge " 'through distortion, misrepresentation and omission.' " *Id.* (citation omitted). Thus, the Court holds that, in this regard, Mr. Waddle violated the Fourth Amendment.

pp. 1100-01:

It is evident from the record in this case that Mr. Waddle did not have a reasonable belief that the children at Heartland were in imminent danger of abuse on October 30, 2001, such that they could be removed without notice or an opportunity to be heard. Instead, the evidence shows that Mr. Waddle was aware at the time that he removed the children from Heartland that the Manure Pit discipline had not occurred in approximately seven months; that the criminally-charged defendants involved in the Manure Pit Incident were no longer in disciplinary roles over the children; that no staff member had ever been adjudicated guilty of child abuse or neglect; and that there were no substantiated allegations of child abuse for months before the petitions were filed. There is also no indication from the evidence that any of the thirty-five children picked up without court orders had ever been involved in an abuse or neglect allegation. Further, Mr. Waddle knew that neither of the most recent allegations of abuse, involving O.M. and J.K., had been substantiated by the Division of Family Services before October 30, 2001. O.M. was not a concern because Mr. Waddle did not seek removal of O.M. by filing a petition. He does not plead that harm to J.K., where there was no substantiated abuse in his case, would justify removal of thirty-five children, including females. As such, the allegations of abuse regarding those juveniles could not serve as a basis to justify removing the thirty-five other juveniles without a court order. This is especially true for any of those thirty-five who were females, as the two instances of abuse towards O.M. and J.K. were said to have occurred in the Boys' Dormitory, which is twelve miles away from the Girls' Dormitory.

Also undermining any claim by Mr. Waddle that he had to remove the children on October 30, 2001 without a prior hearing because of exigent circumstances, is that he was planning the mass removal of children at least by October 23, 2001. This pre-planning is evidenced by the five incriminating documents submitted in this case. Thus, Mr. Waddle cannot assert that this was a situation where he had to make a split-second decision to remove the children for their own safety without notice or hearing. The fact that Mr. Waddle took at least seven days to plan the removal defies his argument that there were

5

exigent circumstances necessitating the removal of the children without notice or a hearing. This determination is reinforced by Mr. Waddle's testimony that the reason he did not seek a hearing before removing the children is because he did not want things to "drag out," not because he was concerned about the immediate safety of the children.

Moreover, even if the Court were to find that Mr. Waddle reasonably believed that there was an immediate threat to the children's safety requiring their pre-notice and pre-hearing removal on October 30, 2001, which it does not, Mr. Waddle still acted to violate Plaintiffs' procedural due process rights when he failed to give them any sort of requested due process after the removal. The evidence shows that while a hearing on the removal was scheduled for November 2, 2001, at which Plaintiffs and their counsel appeared, Plaintiffs were not given an opportunity to be heard because Mr. Waddle dismissed the petitions before a hearing could be held. Because the petitions were dismissed, the Juvenile Court Judge refused to allow Plaintiffs to present any evidence or voice their objections to the removal on the record. The Court finds the Plaintiffs were deprived of procedural due process because of the removal of children where no emergency circumstances existed to justify their removal without prior notice and an opportunity to be heard in advance of the removal, and because Mr. Waddle effectively prevented Plaintiffs from ever receiving any due process related to the removal of the children before and after their removal.

Therefore, the Court concludes that Mr. Waddle violated Plaintiffs' right to family integrity when he removed the children on October 30, 2001, without notice or an opportunity to be heard and in the absence of exigent circumstances.

p. 1103:

In Count IV, Plaintiffs assert that Defendants took actions to disrupt and destroy the association between Plaintiffs, and the students, families, and staff at Heartland by attempting to close the school.

pp. 1106:

The Court finds that all of this evidence, as well as additional evidence set forth in the statement of facts, negates Mr. Waddle's stated purpose for his actions towards Heartland, i.e., to protect the children, and reveals his true intent, which was to close Heartland. Thus, the Court finds that Mr. Waddle's actions infringed upon Plaintiffs' right to associate [with students, families, and staff] in pursuit of educational and religious ends.

## CONCLUSION

For the foregoing reasons, plaintiffs renew their request that the Court allow them to

employ offensive collateral estoppel as set forth herein against defendant Michael Waddle.

6

/s/ Al W. Johnson
Al W. Johnson Bar Number 5386
Law Offices of Al W. Johnson
112 South Hanley Road, Suite 200
St. Louis, Missouri 63105
Telephone: (314) 726-6489
Fax: (314) 726-2821
E-mail: ajohnson@awj-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2010, I electronically filed Plaintiffs'
Renewed Request that the Court Take Judicial Notice of Findings of Fact and
Conclusions of Law From a Previous Case Against Defendant Michael Waddle the Clerk
of Court using the CM/ECF system which will send notification of such filing(s) to the
following:

Tim Belz
timothybelz@aol.com

Diane Peters
diane.peters@ago.mo.gov, kimberly.mcgaughey@ago.mo.gov

Christopher J. Quinn
Christopher.Quinn@ago.mo.gov

Jeannie Desir
jeannie.desir@ago.mo.gov, shannon.mills@ago.mo.gov
Joel A. Poole
joel.poole@ago.mo.gov, Sue.kohler@ago.mo.gov

R. Ryan Harding
ryan.harding@huschblackwell.com

Peter J. Dunne
dunne@rpslaw.com; moriarty@rpslaw.com

Stephen M. Ryals
smryals@sbcglobal.net, info@rblawstl.com, ryals@rblawstl.com

Lisa A. Pake
lpake@haar-woods.com

I hereby certify that on_____, the foregoing was mailed by United States Postal Service to the following non-participants in Electronic Case Filing:

/s/ Al W. Johnson
Al W. Johnson Bar Number 5386
Law Offices of Al W. Johnson
112 South Hanley Road, Suite 200
St. Louis, Missouri 63105
Telephone: (314) 726-6489
Fax: (314) 726-2821
E-mail: ajohnson@awj-law.com